**SIGMON v. UNITED STATES.**

**Civ. A. 279.**

United States District Court
W. D. Virginia, Danville Division.
March 30, 1953.

John W. Carter, Danville, Va., for plaintiff.

Howard C. Gilmer, Jr., U. S. Atty., and R. Roy Rush, Asst. U. S. Atty., Roanoke, Va., for defendant.

BARKSDALE, District Judge.

Roy William Sigmon has instituted this action against the United States of America for damages for personal injuries which he alleges he sustained while confined at the Federal Reformatory at Petersburg, Virginia, invoking the jurisdiction of this court under the provisions of the Federal Tort Claims Act, 28 U.S.C.A. § 1346(b), and 28 U.S.C.A. §§ 2671–2680. Plaintiff alleges that he was required by one Sheets, a Government employee then in charge of the machine shop, to make use of a certain emery wheel to sharpen an axe, that the emery wheel had been permitted to fall into a dangerous state of disrepair, to the knowledge of Sheets, and by reason of the dangerous condition of the said emery wheel and the negligent directions of Sheets, he was cut by the axe while undertaking to sharpen it.

The Government alleged in its answer that the complaint fails to state a claim upon which relief can be granted, and has therefore moved to dismiss the action. In Virginia, the doctrine prevails that a private employer has the duty of providing for his employees a safe place to work. Therefore, it would seem that, if plaintiff and defendant here were engaged in private industry, the plaintiff has alleged a prima facie case of liability if it be assumed that employer and employee were not covered by the provisions of the Virginia Workmen's Compensation Act. Code Va.1950, § 65–1 et seq. Therefore, the Government's motion to dismiss squarely presents the issue of whether or not prisoners confined in federal penal institutions may avail themselves of the Federal Tort Claims Act to sue the United States for damages sustained by reason of the negligence of Government employees charged with the duty of detaining and supervising such prisoners.

The provisions of the Federal Tort Claims Act, so far as here pertinent, are as follows:

"* * * the district courts * * * shall have exclusive jurisdiction of civil actions on claims against the United States, for money damages * * * for * * * personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C.A. § 1346(b).

"The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, * * *." 28 U.S.C.A. § 2674.

The status of a person undergoing confinement as punishment for crime, is not now, and has never been, enviable. Indeed, in 1871, the Supreme Court of Appeals of Virginia, in Ruffin v. Commonwealth, 21 Grat. 790, 795–796, said:

"* * * A convicted felon, whom the law in its humanity punishes by confinement in the penitentiary instead of with death, is subject while undergoing that punishment, to all the laws which the Legislature in its wisdom may enact for the government of that institution and the control of its inmates. For the time being, during his term of service in the penitentiary, he is in a state of penal servitude to the State. He has, as a consequence of his crime, not only forfeited his liberty, but all his personal rights except those which the law in its humanity accords to him. He is for the time being the slave of the State. He is civiliter mortuus; and his estate, if he has any, is administered like that of a dead man.

"The bill of rights is a declaration of general principles to govern a society of freemen, and not of convicted felons and men civilly dead. Such men have some rights it is true, such as the law in its benignity accords to them, but not the rights of freemen. They are the slaves of the State undergoing punishment for heinous crimes committed against the laws of the land. While in this state of penal servitude, they must be subject to the regulations of the institution of which they are inmates, and the laws of the State to whom their service is due in expiation of their crimes."

■ This is not now the law in Virginia, nor in any other state so far as I know. I subscribe to the following pronouncement of the Court of Appeals of the Sixth Circuit in Coffin v. Reichard, 143 F. 2d 443, 445, 155 A.L.R. 143:

"A prisoner retains all the rights of an ordinary citizen except those expressly, or by necessary implication, taken from him by law. While the law does take his liberty and imposses a duty of servitude and observance of discipline for his regulation and that of other prisoners, it does not deny his right to personal security against unlawful invasion."

■ In considering whether or not the provisions of the Tort Claims Act are available to federal prisoners, it must be conceded that the language of the Act, if very broadly construed, might include them. And it must certainly be conceded that federal prisoners are not expressly excepted from the provisions of the Act by any one of the thirteen exceptions enumerated in Section 2680. However, looking at the situation as a whole, and giving the Act a reasonable construction, I reach the conclusion that a federal prisoner, in the situation here presented, may not avail himself of the provisions of the Act. Conceivably, circumstances might arise which would place a federal prisoner in the situation of the plaintiff in the case of Brooks v. United States, 337 U.S. 49, 69 S.Ct. 918, 93 L.Ed.

1200. However, no such question is now before me.

It is, of course, a traditional right and duty of the Government to maintain and operate penal institutions, and the relations between the Government and the inmates of such institutions are covered by a number of statutes: 18 U.S.C.A. §§ 4001–4009, 4041, 4042, 4081–4086, 4121–4128, 4161–4166, 4202, 4207, 4241–4248, 4281–4283, 4321, 5001, 5031–5037. Amongst other things, these statutes provide that the control and management of federal penal institutions shall be vested in the Attorney General, who is required to make rules and regulations for the operation thereof; that medical attention, suitable quarters, and care and subsistence of all convicted persons must be provided by the Bureau of Prisons under the direction of the Attorney General; that the Federal Prison Industries (a corporation chartered by the United States) shall determine the manner and extent of industrial operations, and that employment of all physically fit inmates shall be provided so that a maximum opportunity is presented for the inmates to acquire a knowledge and skill in trades and occupations. And it is also provided, Section 4126, that Federal Prison Industries may pay "compensation to inmates employed in any industry, or performing outstanding services in institutional operations, *and compensation to inmates or their dependents for injuries suffered in any industry.* In no event shall compensation be paid in a greater amount than that provided in the Federal Employees' Compensation Act." (Italics mine.)

■ Thus, it is obvious that it was the intention of Congress, and it is the policy of the United States, that the entire system of federal penal institutions should be operated uniformly in compliance with federal statutes and regulations. It is hardly conceivable that Congress intended in the passage of the Tort Claims Act to give prisoners rights of action "in accordance with the law of the place where the act or omission occurred."

No reported case bearing on the question here involved has been cited by counsel,

rior have I been able to find one. However, Government counsel have attached to their memorandum letters from United States Attorneys and a journal entry showing that the identical question here presented has been decided against the plaintiff on petitions to dismiss, in the cases of Ellison v. United States (Western District of North Carolina), and Dayton v. United States (District of Kansas, Topeka, Oct. 13, 1950). No opinion was filed in either case.

Although I mean no reflection upon persons in the military service, it seems to me that, as to the question here presented, there is a close analogy between persons in the armed services and persons confined in federal penal institutions. In the case of Feres v. United States, 340 U.S. 135, 71 S.Ct. 153, 95 L.Ed. 152, it was held that the United States is not liable under the Tort Claims Act for injuries to members of the armed services sustained while on active duty and not on furlough and resulting from the negligence of others in the armed forces. The Feres case was actually the decision of three similar cases, one of which, Jefferson v. United States, arose in the District of Maryland. In the District Court, Judge Chesnut wrote an interesting opinion, which is quite helpful here. Jefferson v. United States, 77 F.Supp. 706. Judge Chesnut said, 77 F.Supp. at pages 712–713:

> "It is clear enough that the main purpose of the Act was to waive the then existing sovereign immunity of the United States with respect to the ordinary run of tort claims arising in the United States. * * *

> "What Congress must have specially had in mind was the ordinary run of tort claims affecting ordinary citizens or others arising from time to time. This is apparent from the phraseology adopted in section 410(a) furnishing the test of liability 'in accordance with the law of the place where the act or omission occurred.' And this particular purpose of the Act becomes even more apparent when reference is made to the Committee Reports of the Senate and House in submitting the Legislative Reorganization Act. Thus, it

was said in Senate Report No. 1400, and also in the House Committee Report of July 22, 1946, in summarizing the existing law and purpose of the Tort Act as follows: 'As a result of the statutes briefly summarized above, the Government is subject to suit in contract, on admiralty and maritime torts, and for patent infringement. On the other hand, no action may be maintained against the government in respect to any *common-law tort*. The existing exception in respect to *common-law torts* appears incongruous. Its only justification seems to be historical. With the expansion of governmental activities in recent years, it becomes especially important to grant to private individuals the right to sue the government in respect to such torts as negligence in the operation of vehicles.' (Italics supplied.)

> "And again in commenting on the stated exceptions to the Act appearing in section 421, it was said that the exceptions include 'claims which relate to certain governmental activities which should be free from threat of damage suits, or for which adequate remedies are already available.'

> "I do not interpret the reference to common-law torts in the strictly technical sense of the term because the test of liability as stated in section 410(a) is somewhat broader in that it would include statutory torts, such as suits under Lord Campbell's Act for death claims provided for by the statutes of the particular States, which were not theretofore cognizable at common law. But it would seem clear enough that injuries sustained by members of the armed forces of the United States during their service would not be within the general scope of the kinds of actions to which the Committee Report was referring because it is clear enough that such injuries did not constitute common law or statutory torts under the laws of the several States. Indeed it is not understandable how any State legislation could properly have affected the relations of the Unit-

ed States to members of its armed forces which, of course, depended purely on federal law."

The following quotation from Judge Soper's opinion is also quite pertinent, Jefferson v. United States, 4 Cir., 178 F.2d 518, 519:

"We are in accord with the conclusions reached by the Second Circuit. The choice lies between a literal interpretation of the Act and a construction which recognizes the peculiar relationship that exists between a member of the armed services and superior military authority. Congress was plainly impressed with the large number of justified complaints on the part of persons injured through the negligence of employees engaged in the manifold activities of the federal government, and found it desirable to modify the government immunity from suit and to give relief to injured persons through the procedure of the courts rather than through private statutes, which burdened the legislative branch of the government and caused delay in the consideration of complaints. Hence the Federal Tort Claims Act was passed. It seems unreasonable, however, to conclude that Congress, while accomplishing these desirable purposes, intended at the same time to subject every injury sustained by a member of the armed forces in the execution of military orders to the examination of a court of justice if the injured person should make the claim that his injury was caused by the negligence of a superior officer. If this were so, the civil courts would be required to pass upon the propriety of military decisions and actions and essential military discipline would be impaired by subjecting the command to the public criticism and rebuke of any member of the armed forces who chose to bring a suit against the United States. * * *"

It seems even more unreasonable to conclude that Congress intended to open the district courts to every federal prisoner who wished to assert that he had been injured by the negligence of some Government employee charged with his detention or supervision. It would seem that such a result would be extremely detrimental to the maintenance of discipline. I am quite unwilling to so construe the Act.

Then too, as pointed out in Feres v. United States, supra, 340 U.S. at page 141, 71 S.Ct. at page 157:

" * * * the Act goes on to prescribe the test of allowable claims, which is, 'The United States shall be liable * * * in the same manner and to the same extent as a private individual under like circumstances * * *,' * * * 28 U.S.C.A. § 2674."

A private individual would never find himself "under like circumstances" to those alleged in the complaint, because no private individual has the legal right to hold any other private individual in penal servitude.

Also, the Act makes liability depend upon "the law of the place where the act or omission occurred", 28 U.S.C.A. § 1346(b). Of course, the Government maintains penal institutions in many states. It is hardly likely that Congress intended, in the face of the numerous statutes for the establishment of a uniform prison system, that the question of whether or not a prisoner had a right of action against the Government would depend upon the law of the state in which the prisoner happened to be confined. As the court said in Feres v. United States, supra, 340 U.S. at page 143, 71 S.Ct. at page 158:

"That the geography of an injury should select the law to be applied to his tort claims makes no sense. We cannot ignore the fact that most states have abolished the common-law action for damages between employer and employee and superseded it with workman's compensation statutes which provide, in most instances, the sole basis of liability. Absent this, or where such statutes are inapplicable, states have differing provisions as to limitations of liability and different doctrines as to assumption of risks, fellow-servant rules and contributory or comparative negligence. It would hardly be a rational plan of providing for those dis-

abled in service by others in service to leave them dependent upon geographic considerations over which they have no control and to laws which fluctuate in existence and value."

This reasoning seems even more applicable to the situation here under consideration.

It is true that in the Feres case, 340 U.S. at page 144, 71 S.Ct. at page 158, the court did attribute some bearing on the question involved "to enactments by Congress which provide systems of simple, certain, and uniform compensation for injuries or death of those in armed services". Admittedly, there is no "simple, certain, and uniform compensation" provided for injuries sustained by federal prisoners. However, as previously pointed out herein, Title 18, Section 4126, does provide for "compensation to inmates or their dependents for injuries suffered" under certain circumstances. It seems fair to assume that it was the intention of Congress to provide this measure of compensation for injuries to federal prisoners, and only this measure of compensation. It has never been considered that persons undergoing punishment for crime are entitled to the same treatment as members of the armed services engaged in the defense of their country.

In the concluding paragraph of the opinion in the Feres case, the court said:

"Without exception, the relationship of military personnel to the Government has been governed exclusively by federal law. We do not think that Congress, in drafting this Act, created a new cause of action dependent on local law for service-connected injuries or death due to negligence. We cannot impute to Congress such a radical departure from established law in the absence of express congressional command."

This language seems peculiarly pertinent to the question here presented. To permit federal prisoners to avail themselves of the provisions of the Federal Tort Claims Act, would establish a new and novel procedure, and to paraphrase, I cannot impute to Congress such a radical departure from estab-

lished law in the absence of express congressional command.

It follows that an order will be entered granting the Government's motion to dismiss this action.