[Crim. No. 7635.   Second Dist., Div. One.   Apr. 2, 1962.]

THE PEOPLE, Plaintiff and Respondent, v. IVAN EUGENE HUTCHINS, Defendant and Appellant.

Burton Marks, under appointment by the District Court of Appeal, for Defendant and Appellant.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack K. Weber, Deputy Attorney General, for Plaintiff and Respondent.

WOOD, P. J.—In an information defendant was accused of grand theft in violation of section 487, subdivision 3, of the Penal Code, in that on July 26, 1960, he did unlawfully take an automobile, then the property of Kern Rental Service. The information was amended (under circumstances hereinafter stated) whereby defendant was accused of violation of section 10851 of the Vehicle Code in that on July 26, 1960, he did unlawfully drive and take an automobile, then the property of Kern Rental Service, without the consent and with the intent to deprive the owner of title to and possession of the vehicle. At the beginning of the trial the defendant said that he would represent himself; and he asked that the public defender, who was his counsel, be relieved from representing him. That motion was granted, and the defendant appeared in propria persona. The jury found the defendant guilty as charged in the amended information. His motion for a new trial was denied, and he was sentenced to state prison. He appeals from the judgment.

Appellant contends (1) that the evidence does not show that a crime was committed; and (2) that he was denied a fair trial and due process of law.

On July 26, 1960, the defendant rented an automobile from the Kern Rental Service in Long Beach (that company is a licensee of the Hertz company). The written rental agreement (Exhibit 1), which was signed by defendant, provided that the automobile would be returned on August 1, 1960, and that the rental charge was $10 a day and 10 cents a mile. Defendant's address, as stated at the top of the agreement, was 44530 North Sierra Highway, Lancaster, California; and his home address and telephone number, as stated therein, were 436 East Tamarack, Inglewood—PL 38229. The agreement contained abbreviations indicating that he was a Western Airlines pilot and that his card number (as pilot) was 4528.

The automobile was not returned on August 1, 1960, but it was located or found on a Hertz automobile rental lot at the Los Angeles International Airport on August 18, 1960. It had been driven 1,589 miles during the time from July 26 to August 18, 1960. The amount of the charge under the agreement was $359.01, and no part thereof has been paid.

Mr. Kern, the owner of the Kern Rental Service, testified that the rental automobile was abandoned at Los Angeles Airport; he did not give anyone permission to keep the automobile after August 1; the agent who prepared the contract is now a student at Palo Alto; he (witness) went to Lancaster and checked the address "44530 North Sierra Highway," which was stated on the contract, and found that that place was a used car lot, and that the owner of the lot knew the defendant but had not seen him for several months.

Mr. Kibbie testified that he was the manager of a location (apparently a residential court) at 436 East Tamarack in Inglewood; the defendant lived there, as a renter, from March 6, 1959, to June 26, 1959, and on said last date he left that place at the request of the manager (witness) who told him "not to return"; no arrangement was made to retain defendant's mail or to forward it to him. On cross-examination, he testified that the last time he saw defendant was in August 1960 (about 14 months after his tenancy had terminated) when the defendant was on the sidewalk near said Tamarack address; at that time he asked the defendant to pay money which defendant owed to him, and then the defendant threw a can at him and ran away.

Mr. Tuthill, an employee of the Kern Rental Service in Long Beach, testified that on August 18, 1960, he went to the Los Angeles Airport to recover the automobile which had been rented to defendant; the automobile was among other rental automobiles in an overflow parking lot of the Hertz Corporation; there were no keys in the automobile; he returned the automobile to Long Beach.

A representative of "Budget Car Rentals" testified that defendant rented an automobile from said company as shown by Exhibit 2, a written agreement made on May 17, 1960; the automobile was to be returned on May 18, 1960, but it was not returned on that date.

A representative of "Swift Foreign Auto Rental" testified that defendant rented an automobile from said company for one week as shown by Exhibit 3, a written agreement made on February 16, 1960; the automobile was not returned until

March 3 or 4, 1960; that letters sent to defendant's address, as shown in the agreement, were returned; abbreviations on the agreement indicate that defendant was employed by the American Airlines. The agreement recites the name and home address of defendant as "Capt. Ivan E. Hutchins"—137 Wilson Avenue, South Roxana, Illinois.

Officer Estes testified that, in a conversation with defendant at the time of the preliminary examination on November 14, 1960, he (witness) showed a copy of the rental agreement (Exhibit 1) to defendant; in response to questions, the defendant stated as follows: He had signed the agreement and he had written the home address and telephone number thereon (436 E. Tamarack, Inglewood—PL. 38229); he did not live at that address when he made the agreement; he knew the man who owned the business at 44530 North Sierra Highway in Lancaster, and had been employed there and had used that address as his mailing address; he had had the automobile about ten days and he left it at the Hertz lot at the Los Angeles International Airport and had telephoned the Hertz company; at the time he rented the automobile here involved he had another rented automobile in his possession; he rented this automobile (one involved here) for his girl friend.

Mrs. Gally, called as a witness by defendant, testified that she had known defendant about four years; about August 3, 1960, about 5 p. m., when she returned from work she saw an automobile in front of her home; soon thereafter defendant telephoned and said that he had an automobile outside her home for her use; then he came to her home; prior to the time he came, they had planned to go to dinner that evening (August 3) in celebration of her daughter's birthday which was on August 20; when he arrived at her home, he said that he was on his way to "drop the car off" (the rented automobile involved here which he used in coming to her house) and that if she and her daughter wanted to go with him and would follow in her automobile (the rented automobile he had left in front of her house) they would go to dinner from the place where he left the automobile; she drove the automobile and followed him as he drove the other rented automobile to the Los Angeles International Airport; then he asked her to wait while he went into the Hertz lot to see if he could talk to someone; since she could not park there, she kept driving around the parking lot approximately fifteen minutes until he was waiting for her at the Hertz lot; then he entered her automobile and they proceeded to the restaurant where they

were to have dinner; when they were at the restaurant he said something about having to leave the keys in the automobile and that it was important that he contact someone; while they were at dinner he left the table two or three times; the birthday was being celebrated ahead of time because a niece of the witness was to be married on August 20 (the birthday); she (witness) remembered that the car was returned about August 3, because the birthday dinner was "an occasion."

Defendant testified that on July 26, 1960, he rented the automobile for the use of Mrs. Gally; at that time he had another rented automobile in his possession; the automobile (one involved here) which he rented for Mrs. Gally was turned in at the Hertz lot at the Los Angeles International Airport on August 3, 1960—it was parked on that lot; Mrs. Gally explained (in her testimony) the exact story as to how the automobile was turned in on that date, and as to the dinner engagement; after arriving at the restaurant he telephoned the Hertz agency at the airport to notify the agency where the automobile was located, that the keys and contract were in the automobile, and that the agency could bill him for the rent at 44530 North Sierra Highway in Lancaster; when he was at the agency, turning the automobile in, no one was at the stand and he could not wait there forever for someone to appear—while Mrs. Gally was waiting for him or driving around in the circle; after leaving the restaurant he stopped at the Pacific Southwest Airline and bought a ticket; he went away the next day and was gone two or three days; on August 5 he went by airplane to Texas, and he returned on August 6; he rented the automobile for Mrs. Gally on July 26 but he did not give it to her until August 3; after renting that automobile for her, the two rented automobiles which he then had "sat empty" and no one used them; with reference to the statements in the agreement regarding identification and addresses, he placed his "portfolio type identification thing" (apparently a folder with several identification cards in it) on the counter, and the agent for the rental company "copied off of it"; he was not a captain, but when a person walks in and says, "I am a pilot," they might think that the person is a captain.

As above stated, the information (which charged grand theft of an automobile) was amended to charge a violation of section 10851 of the Vehicle Code. That section provides: "Any person who drives or takes a vehicle not his own, with-

out the consent of the owner thereof, and with intent either permanently or temporarily to deprive the owner thereof of his title to or possession of the vehicle, whether with or without intent to steal the same, . . . is guilty of a felony, . . . The consent of the owner of a vehicle to its taking or driving shall not in any case be presumed or implied because of such owner's consent on a previous occasion to the taking or driving of the vehicle by the same or a different person.''

Appellant contends that the evidence does not show that a crime, denounced by said section 10851, was committed. He argues to the effect that, under circumstances where the owner has consented that a vehicle might be used by a person for a designated time, the section does not make it an offense if the automobile is retained beyond that time. In *De Mond* v. *Superior Court*, 57 Cal.2d 340 [19 Cal.Rptr. 313, 368 P.2d 865], De Mond sought a writ of prohibition on the ground that the committing magistrate did not have probable cause to hold him to answer upon a charge of violating said section 10851. He had rented an automobile from an automobile rental company for a period of five days. According to testimony on behalf of the prosecution therein, the rental company, at the request of De Mond, had extended the rental period two or three days; but, according to testimony for De Mond, the company had extended the period until he was ''through with'' the automobile. The automobile was repossessed by the company more than two months after the expiration of the extended rental period of two or three days. In that case the court, in denying prohibition, said at page 344: ''[T]here can be no doubt that the order of commitment in the present case is amply supported by the evidence. The gist of the offense proscribed by Vehicle Code, section 10851, is the taking or driving of a vehicle without the owner's consent and with the specific intent to deprive the owner, permanently or temporarily, of title to or possession of that vehicle. From the testimony of Bert Baer [manager of the rental company] the magistrate could properly have inferred that defendant kept and drove the rented Pontiac for more than two months beyond the expiration of the agreed period without authorization to do so and with the specific intent to deprive Hav-A-Kar [rental company] at least *temporarily* of its *possession.''* In the present case, the defendant did not return the automobile to the Kern Rental Service in Long Beach where he obtained it and where he agreed to

return it. He left the automobile on a lot of the Hertz company at the Los Angeles Airport, and it was not located or found there by the Kern Rental Service until more than two weeks after the expiration of the agreed rental period. According to defendant's testimony, the automobile was rented for defendant's girl friend, but it was not used and was left on the Hertz lot on August 3 (two days after the expiration of the agreed period). There was prosecution evidence, however, that the automobile had been driven 1,589 miles from July 26 (date when rented) to August 18 (date when found on lot). He did not pay any part of the rental charge of $359.01; and, according to prosecution evidence, he did not offer to pay any part thereof, and he did not communicate with the owner relative to returning the automobile. By reason of defendant's representations as to his occupation and his home and business addresses, no rental deposit was required of him when the agreement was made. There was evidence that such representations were false. It is not necessary to refer specifically to the other evidence, hereinabove related, which indicates that defendant, without the consent of the owner, intended to deprive the owner of the possession of the automobile by keeping it for more than two weeks after the agreed return date of August 1. The evidence was sufficient to prove that the crime of violating section 10851 of the Vehicle Code was committed by defendant.

Appellant also contends that amending the information was prejudicial to him and denied him a fair trial and due process of law in that he was not arraigned on the amended information, and the amendment was made after the opening argument by the prosecution. ■ The reporter's transcript shows that the deputy district attorney, after making his opening argument to the jury, made a motion to amend the information by changing the accusation from grand theft to violation of section 10851 of the Vehicle Code. The clerk's transcript shows the motion to amend the information was made after the arguments to the jury had been made.[1] After the motion to amend was made, the judge said: "As I have explained to you, Mr. Hutchins [defendant], in chambers, I think that this is for your benefit." Then the judge made a further statement which was intended as an explanation of

---

[1]The minutes recite: "Both sides rest. Counsel argue the cause to the jury. On motion of people, the information is amended to charge defendant with Violation of Section 10851 Vehicle Code instead of Grand Theft. The Court instructs the jury."

the amendment.[2]  The motion to amend was granted.  The judge told the deputy district attorney to file an amended information promptly and to give a copy of it to defendant. The reporter's transcript shows that the defendant then proceeded to make his argument to the jury.  The defendant did not oppose the motion to amend.  After the motion was granted, he did not object to proceeding immediately with the trial without further arraignment or plea.  Under the circumstances here no substantial right of the defendant was prejudiced by amending the information or by failing to rearraign him or to obtain a plea on the amended information. The remaining part of the trial, which consisted of arguments to the jury, proceeded as though defendant had been arraigned and had entered a plea of not guilty to the amended information.  In *People* v. *Walker*, 170 Cal.App.2d 159 [338 P.2d 536], the court said at page 164: "[W]here an amended pleading is filed by the district attorney in open court pursuant to statute, and the accused . . . offers no objection, makes no motion for continuance, and nothing is called to the court's attention to show that by making such amendment the sub-

---

[2] "I will explain to you, Ladies and Gentlemen, that there are two sections under which the defendant could be charged. Normally, in a case such as this, he is charged under both sections. One is grand theft of the automobile where it's alleged that it's his purpose to permanently deprive the owner of the automobile. The Court stated that should a jury find him guilty of grand theft in this instance, the Court thinks that he would correct it under a motion for a new trial to temporarily depriving the owner of possession at a time when the owner was entitled to it. Under the Vehicle Code, anyone that deprives the owner of it, not intending to permanently deprive him, can be charged under the Vehicle Code, as counsel has just stated. This is not binding upon you, although it will be when the amendment is made and the Court does allow the amendment.

"We have discussed the matter with the District Attorney and Mr. Hutchins in chambers and suggested to the District Attorney that the information be so amended to simply charge him with depriving the owner of the automobile for any period of time when the owner was entitled to its possession. That is generally known in criminal procedure as joy riding, a joy riding case where they take the car and do not intend to permanently deprive the owner but just use it temporarily beyond the period for which—well, in the normal case, it's not beyond any period, it's just taken, but here where it's taken legally in the first instance, or semi-legally, at least, the owner voluntarily parted with the possession of it, then it seems to me more appropriate to merely charge here that under the Vehicle Code he attempted to deprive the owner temporarily of its use.

"Now, the Court doesn't want you to, and the Court now instructs you, that you are not to assume that any of the remarks the Court has made have anything to do with the question of guilt in this matter at all, it's simply charging him with a different offense than he was originally charged with. Do I make myself clear?"

stantial rights or any rights of the defendant are prejudiced, he may not for the first time raise the point on appeal. [Citations.] Nor do we find merit in appellant's contention that he was deprived of an arraignment and plea on the amended information. . . . Although [Pen. Code] section 1009 . . . provides that 'defendant shall be required to plead to such amendment or amended pleading forthwith,' we perceive here no violation of defendant's substantial or constitutional right or any prejudice to him because his plea was not entered to the amended charge, for he secured all the advantages of a plea of not guilty regularly entered. The court proceeded to trial on his plea to the offense alleged in the original information and defendant at all times received the benefit of a plea of not guilty, since the cause was tried as though such a plea had been interposed to the amended information. Defendant's substantial rights suffered no detriment by reason of the failure to repeat the plea [citation]."

Appellant asserts further that the explanatory remark of the judge to the effect that the new charge would be "more appropriate" could be interpreted as indicating that the judge thought that the defendant was guilty of the charge in the amended information. The explanation also included an instruction that the jury should not assume that the remarks have anything to do with the question of guilt. The remark so referred to must be considered, of course, in connection with the whole explanatory statement. The judge did not err in making the statement.

Appellant also asserts that the deputy district attorney was guilty of prejudicial misconduct in making a certain statement in his argument to the jury. That statement was to the effect that the district attorney's office is not concerned with the recovery of money for an individual, that the district attorney's office is not interested in using the office to coerce payment for a person, that it is a crime or is not a crime, and if it is a crime "we are interested," but we do not conduct civil litigation here. It appears that the statement of the deputy was in reply to argument of the defendant to the effect that the charge against him involved a civil matter for neglect to pay a bill on time. In his argument the defendant said: "What am I charged with here, auto theft or neglect to pay a bill on time? . . . [H]ow can I pay a debt when I am in custody of the Sheriff? . . . . If the Kern Auto wished to take me into court on a civil suit for rental fees,

fine, but please don't let's charge me with auto theft." The deputy district attorney was not guilty of misconduct.

Appellant was not denied a fair trial or due process of law. The judgment is affirmed.

Fourt, J., and Lillie, J., concurred.

A petition for a rehearing was denied May 1, 1962, and appellant's petition for a hearing by the Supreme Court was denied May 29, 1962.