Ivan E. HUTCHINS, Appellant,

v.

Walter DUNBAR, Director of Corrections, Fred R. Dickson, Warden, et al., Appellees.

Misc. No. 1672.

United States Court of Appeals
Ninth Circuit.

Jan. 28, 1964.

Ivan E. Hutchins, in pro. per.

Stanley Mosk, Atty. Gen., of the State of California; Albert W. Harris, Jr., Deputy Atty. Gen., and Robert R. Granucci, Deputy Atty. Gen., San Francisco, Cal., for appellees.

Before POPE, MERRILL and KOELSCH, Circuit Judges.

POPE, Circuit Judge.

The appellant was convicted of grand theft in a California Superior Court. His conviction was affirmed on appeal, People v. Hutchins, 202 Cal.App.2d 64, 20 Cal.Rptr. 497; and the California Supreme Court denied a hearing. He is within the custody of respondents pursuant to his conviction. The appeal is from a denial of a petition for writ of habeas corpus in the federal district court.

His petition for writ of habeas corpus recounts a long series of what he claims to be improper treatments by officials of the California Supreme Court and by prison officials. He alleges that he was not given proper or any notice of the Supreme Court's denial of a hearing so that he was deprived of a fair opportunity to petition the United States Supreme Court for certiorari. He complains that thereafter he sought to file a petition for writ of habeas corpus with the Supreme Court of California which was returned to him unfiled with a request that he furnish additional copies. He asserts that he was improperly denied facilities to make extra copies by the prison authorities; and that he finally sent his petiton with three copies to the Clerk of the Supreme Court who, he states, improperly returned the same to him.

We assume, without deciding the matter, that the rejection of his attempted filing of the petition for writ of habeas corpus with the Supreme Court of California may have been so improper under the circumstances that he must be deemed to have done everything within his power to exhaust his state remedies.

The remainder of the appellant's petition is limited to a recital of a long series of what petitioner asserts were acts amounting to unfair treatment of him by the prison authorities. He alleges that he was kept in an isolation cell in prison for a period of approximately 30 days which operated to prevent his application for certiorari; that when he sought to send a telegram to his attorney this was delayed for a period of 3 days. He alleges that he filed a former petition for writ of habeas corpus based upon his being deprived of the privilege of communicating with state and federal courts; that an order to show cause was issued in that matter to which the Attorney General made return, but he was precluded from traversing that return because of his incarceration in an isolation cell.

Petitioner states that he had requested a Mrs. Gally to bring to him from the attorney, who was appointed to represent him in the state court on his appeal, all records, transcripts and other appeal proceedings, and that Mrs. Gally was to deliver them to appellant when she visited him at the prison; that the prison officials prevented her from visiting him from July 11, 1962 to August 17, 1962; that he was prevented from sending Mrs. Gally the necessary traveling expense; that Mrs. Gally arrived at San Quentin prison and visited petitioner but she had been prevented from renting a car at the airport to travel to the prison; that when Mrs. Gally left the airport all of the records she was to bring with her were missing although she recovered the same after she had visited appellant at the prison; that she could not be sure that all of the records were accounted for because of some 6 to 8 hours delay in procuring them.

Mrs. Gally visited appellant the second time and then, pursuant to his instructions, took the papers with her back to Los Angeles with instructions to send them by registered mail to him. Petitioner states that during the time these documents were out of Mrs. Gally's possession they were tampered with and some were missing, although nothing is specified as to what is missing; that some of them were "possibly altered or a portion thereof stolen".

Other "peculiar things" happened to Mrs. Gally:—after she had visited appellant for the first time and went to her motel room near the San Francisco airport, she was followed by another car

with a man at its wheel; that when she got to her motel room and looked out of the window she saw another car near the one previously mentioned; this was a police car drawn up alongside the other car and the stranger and the man in the police car held a conversation after which each drove away. Among the papers which Mrs. Gally had were some which were proof of appellant's innocence; and appellant alleges that the persons who intercepted Mrs. Gally's baggage may have stolen a part of these documents; that the prison officials have prohibited petitioner from communicating by mail with Mrs. Gally about these matters. When Mrs. Gally came to see him her visits were cut short; and an officer stood by to overhear all conversations.

He alleges that on September 11, 1962, a registered package came to San Quentin prison for petitioner; petitioner was asked to sign for it but he refused to sign the registered and certified mail log book kept by the prison mail room; he refused to sign because the package had been opened by prison officials and he had been told that he could not have the contents until the prison officials decided which documents he could receive. The documents contained in a registered mail package were returned to Mrs. Gally in Los Angeles and this operated to prevent him from applying for certiorari to the Supreme Court of the United States by October 1, 1962, the date to which his right to file such petition had been extended. This related to an attempt to seek certiorari to review the judgment of the California courts. That the manner in which the prison authorities dealt with the documents referred to was adopted by them pursuant to their deliberate intention to prohibit petitioner from filing a petition for certiorari to the United States Supreme Court since the officials are aware and have information that petitioner is innocent of the charge on which he was convicted.

The petition further alleges that since August, 1961, appellant had certain evidence in support of his innocence but that since he counted upon his court appointed attorney to procure a reversal of his conviction he did not release that evidence to the attorney for use on the appeal but thought it best to withhold the evidence until his appeal was won and then use it in the prosecution of a civil action against the persons responsible for his conviction. He alleges he is only one of many inmates who had legal documents suppressed by the respondents.

Because of all these allegations appellant asks that he be released on habeas corpus.

This petition was first denied by one judge of the court below on April 17, 1963. On April 26, 1963, petitioner asked for a rehearing or for a certificate of probable cause for an appeal. On May 13, 1963, another judge of the court, who found the petition wholly lacking in sufficient facts to call for a hearing or rehearing, denied his application for rehearing but granted his petition for certificate of probable cause. Just why that certificate of probable cause was granted we are unable to perceive.

The extended account we have here given of the allegations of the appellant's petition for the writ of habeas corpus sufficiently shows, we think, that there is no substance to the petition. As we have indicated, we are assuming exhaustion of state remedies. On this point the failure to have an opportunity to petition for certiorari is unimportant. Fay v. Noia, 372 U.S. 391, 435, 83 S.Ct. 822, 9 L.Ed.2d 837.

We assume without deciding that Hutchins had the same right to petition the Supreme Court for certiorari to review the decision of the California court upon his appeal, (People v. Hutchins, supra) that Cook had to take an appeal in Dowd v. United States ex rel. Cook, 340 U.S. 206, 71 S.Ct. 262, 95 L.Ed. 215, and that Cochran had to appeal from his conviction in Cochran v. Kansas, 316 U.S. 255, 62 S.Ct. 1068, 86 L.Ed. 1453. And if the prison authorities improperly suppressed his attempted petition for certiorari, or frustrated his attempt to petition for certiorari, we might have here a case similar to the two cases just cited,

and an instance of denial of equal protection. However, as we have indicated, petitioner discloses that the legal documents in the possession of Mrs. Gally were sent to him by registered mail, and the reasons he did not receive them were first, that the package had been opened by the prison officials; second, that he was told the prison official must inspect the contents of the package, and third, that he demanded the prison officials must give him a receipt for each document he received if he should sign the mail log book showing receipt of registered mail. For these reasons he refused to place his signature on the registered mail log book.

■ Obviously a prison official who failed to open and inspect the contents of a registered package sent to a prisoner would be unfit to hold his office. The sum and substance of petitioner's allegations is that it was his own unreasonable stubbornness in respect to the signing of this mail registry that kept him from having his documents. It is not perceived why he insisted on receipts from prison officials; certainly failure to sign such receipts on the part of the officials would not amount to frustration of petitioner's efforts.

■ Petitioner's allegations as to his being held in isolation is not relevant here as his petition shows that he was released from isolation on July 27, 1962. He then had access to his attorney and he, or his attorney, obtained from Justice Douglas an extension of time for filing petition for certiorari which was executed on August 29, 1962. At any rate, when he was attempting to procure his papers through Mrs. Gally, he had a second visit from her on August 26, 1962, at which time the documents had been delivered to her. He alleges he instructed her not to release the documents to prison officials "unless said officials were willing to sign for each individual document received." Any frustration petitioner felt was the result of his own conduct. For this reason the case does not come within the reasoning of Dowd v. United States ex rel. Cook or Cochran v. Kansas, supra.

There is no single allegation as to any denial of constitutional or other fundamental right in the prosecution of appellant in the California courts. The claim that he was denied access to the Supreme Court of California is immaterial for we have assumed that if that happened his state remedies were exhausted; that he has not been denied access to the federal court is apparent from the fact that this and other petitions and other documents have been freely and without hindrance filed by the petitioner in the court below. If the appellant has any remedy against the prison officials, see United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805, and Hatfield v. Bailleaux, 9 Cir., 290 F.2d 632, it is certainly not by way of habeas corpus.

■ Wholly absent here is any suggestion of any denial of such constitutional right as in the case of coerced confessions or denial of representation of counsel or illegal seizure of property or similar infringements of constitutional limitations. Therefore the petition is completely frivolous; the appeal is frivolous and the motion to dismiss the appeal is granted. United States v. Johnson, 327 U.S. 106, 66 S.Ct. 464, 90 L.Ed. 562.

While this matter has been pending here our attention has been called to appellant's claim, supported by some showing, that he paid one Arthur Warner, a member of the bar of this court, the sum of $250 for which Warner agreed to represent appellant on this appeal, and that no such representation has been made. We have taken steps to require the said Warner to respond to this charge.

If some default of Warner operated to defeat appellant's claim we might be inclined to appoint other counsel to represent him on this appeal. But the deficiencies in appellant's case arose prior to the appeal. They relate to a failure to state a claim in the district court.

Since the decision against appellant is not res adjudicata he may file a new petition for a writ if he has any grounds

therefor. Attention is called to the fact that both the Northern and the Southern Districts of California have rules, containing required forms, for preparing petitions for habeas corpus, and copies thereof should be obtained and used in all such cases.