**Angel ISAAC, Plaintiff,**

**v.**

**The UNITED STATES of America and the United States Bureau of Prisons, Defendants.**

**No. 77 Civ. 359 (WCC).**

United States District Court, S. D. New York.

Sept. 13, 1979.

---

Robert David Becker, P. C., New York City, for plaintiff.

Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, for defendants; Gaines Gwathmey, III, Barbara L. Schulman, Asst. U. S. Attys., New York City, of counsel.

## OPINION AND ORDER

CONNER, District Judge:

This action is brought pursuant to the Federal Tort Claims Act ["FTCA"], 28 U.S.C. § 2671 *et seq.*, to recover damages for defendant's [1] alleged failure to render timely, adequate, and proper medical treatment to plaintiff while he was a prisoner in the care and custody of defendant.

A bench trial was held on March 19 and 20, 1979. This Opinion and Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Rule 52(a), F.R.Civ.P.

Plaintiff, Angel Isaac ("Isaac"), was confined to the Federal House of Detention, 427 West Street, New York, New York (hereafter "West Street"), from February 1974 to September 1975, where he was in the custody of the United States Bureau of Prisons. Sometime between January 31 and February 3, 1975, Isaac became ill. Thereafter, he was admitted to Bellevue Hospital where he received treatment for a condition diagnosed as a Mallory-Weiss tear high on the greater curvature of the stomach. The treatment consisted of lavage, or bathing, of the lining of the stomach with cold saline solution, transfusion of several units of packed blood cells, observance of a restricted diet, and bed rest. Isaac was discharged from Bellevue Hospital on February 10, 1975.

Plaintiff contends that he became seriously ill in the early morning hours of Saturday, February 1; that West Street prison guards were notified of his condition at that time; but that he did not receive medical assistance until approximately three days later when he was transferred to Bellevue Hospital. He alleges that defendant's fail-

---

1. The Bureau of Prisons is not a proper party defendant under the Federal Tort Claims Act. See 28 U.S.C. § 2679(a).

ure to provide him with timely medical assistance caused him to endure pain and suffering and to sustain injuries of a permanent nature.

At trial, plaintiff testified as follows: That on the evening of January 31, 1975, while he was eating dinner, he swallowed some metal scrapings.[2] He complained of this to West Street kitchen personnel. Sometime between 2:30 and 3:00 A.M. on Saturday morning, February 1, he awoke feeling "sweaty and dizzy." He complained of his condition to the prison guards who told him that they would try to have someone from the medical department come up to see him.

Isaac returned to bed and at about 3:30 or 4:00 A.M. that morning he vomited blood. The guards were again summoned and they informed Isaac that the medical staff had been alerted that he was ill and that someone would be coming up to look at him. (Transcript, hereafter "Tr.," at p. 10).

Later that Saturday morning, at about 6:30 or 7:00 A.M., Isaac was taken to the West Street prison hospital by an inmate. At the prison hospital, he was "looked at" by Mr. Rodriguez, a medical attendant, and he was informed that there was nothing that could be done for him until the doctor arrived. Isaac again vomited blood while at the hospital that morning.

Isaac returned to his cell to rest. At approximately 6:00 or 7:00 P.M. that evening, he returned to the prison hospital and complained to an attendant that he was bleeding and feeling weak. Isaac testified that he received no medical care on that Saturday or on Sunday, February 2.

On cross-examination, Isaac was asked to name the prison guards to whom he complained that he was feeling ill on Saturday and Sunday, February 1 and 2. He could

recall the name of only one guard, a Mr. Summors ("Summors").

Isaac testified that on Monday morning, February 3, he was helped to the prison hospital by an inmate. There he was examined by a facility doctor who transferred Isaac to Bellevue Hospital to receive emergency medical care.

With respect to his contention that he sustained injuries of a permanent nature, Isaac testified that he presently has problems with his stomach that he did not have prior to January 31, 1975. Isaac also stated that he feels he has less energy now than he had prior to January 31; for example, he feels that he is no longer able to participate in sports and other leisure activities to the same extent that he did prior to January 31.

Plaintiff called Dr. Daniel Present, his treating physician and a specialist in gastrointestinal diseases, as his expert witness. Dr. Present examined Isaac on two occasions, performed a G.I. series on him, and had an endoscopy conducted of Isaac's stomach and esophagus. The examinations and the results of the tests revealed abnormalities in Isaac's upper esophagus and stomach. Dr. Present's diagnosis was that Isaac presently suffers from peptic disease, an ulcer-type disease with gastritis, and he speculated that Isaac might have esophagitis, or inflammation of the esophagus.

Dr. Present stated that he had reviewed Isaac's Bellevue Hospital records which indicate that Isaac suffered from a Mallory-Weiss tear in 1975. Dr. Present explained that a Mallory-Weiss tear is usually a tear of the lining of the esophagus; that the tear is most often induced by vomiting; and that the principal symptom of the Mallory-Weiss tear is bleeding.

---

**2.** Defendant moves to strike Isaac's testimony concerning the metal scrapings on the ground that it was outside the perimeters of the lawsuit: that the complaint makes no allegation concerning such conduct and that plaintiff had never mentioned it in response to defendants' interrogatories or at his deposition.

Plaintiff appears to have abandoned any claim against the United States on the theory that the

Mallory-Weiss tear was caused by defendant's negligence in preparing the meal served on January 31, 1975 at the West Street facility. In any event, the Court concludes that the evidence adduced at trial does not establish that the Mallory-Weiss tear was caused by a scrap of metal, see Tr. at pp. 79–81, or that there was any metal in Isaac's soup on January 31, 1975.

When asked on direct examination whether he believed that the abnormalities in plaintiff's stomach and esophagus were related to plaintiff's complaint that he was permitted to vomit blood for two or three days before he was hospitalized in 1975, Dr. Present testified that he did not think that the vomiting induced Isaac's peptic disease and that he could not state with a reasonable degree of medical certainty that Isaac's esophagus symptoms were referable to Isaac's treatment, or lack of it, in 1975.

At the close of plaintiff's case, defendant moved pursuant to Rule 50, F.R.Civ.P., for a directed verdict on the ground that plaintiff had failed to prove any claim under the FTCA. The Court granted the motion as to plaintiff's claim for damages for permanent injury caused by defendant's conduct. The Court held that plaintiff had failed to present credible evidence to establish, by a preponderance of the evidence, a causal connection between the alleged delay in treatment in 1975 and plaintiff's present symptoms. Indeed, plaintiff's own physician had testified that plaintiff's peptic disease was not referable to the alleged delay in treatment and that he could not state with a reasonable degree of medical certainty that plaintiff's esophagus problem was referable to the events of 1975.

However, the Court held that there was sufficient evidence from which it could conclude that Isaac was allowed to vomit copious quantities of blood over a period of several days before he received any professional medical attention. Accordingly, the Court declined to dismiss plaintiff's claim for pain, suffering and mental anguish.

Following the Court's ruling, defendant stated that it would not call any witnesses but that it would rely solely upon the documents in the record—the Bellevue Hospital records, Isaac's West Street prison hospital records, the West Street hospital log and the Bureau of Prisons records—to demonstrate that Isaac received timely and adequate medical attention and that he was not entitled to any damages for pain and suffering.

Defendant contends that Isaac's recollection of the events of February 1975 is inaccurate and that the documentary evidence establishes that Isaac vomited blood for the first time on Sunday, February 2, not Saturday, February 1; that he complained that he was ill to West Street personnel for the first time on Monday, February 3; and that when he renewed his complaints on Tuesday, February 4 (and not on Monday, February 3, as Isaac testified), he was transferred to Bellevue Hospital.

The Bellevue Hospital records, Plaintiff's Exhibit 1, establish that Isaac was admitted to the hospital on Tuesday, February 4 and not on Monday, February 3 as Isaac testified at trial. In his post-trial brief, Isaac acknowledges that February 4 is the date on which he was transferred from West Street to Bellevue Hospital.

With respect to the onset date of Isaac's illness, the Bellevue Hospital records contain conflicting entries. The notes taken by a Bellevue Hospital physician at the time of plaintiff's admission on February 4 state, at the top of the patient's history section, that Isaac had "hematemesis intermittantly X 3 days." Isaac reported to the doctor that four days prior to his admission to Bellevue, he had a headache requiring that he take three aspirins. The next two entries have been altered. The doctor originally noted that three days prior to his admission, Isaac woke up at 4:00 A.M. and vomited a half cup of black blood but a "two" was later written over the "three." The next notation originally stated that "two days" prior to his admission Isaac reported vomiting 500 cc of black blood and being sent to the West Street prison hospital but a "one" was later written over the "two." On the day of his admission, Isaac reported to the doctor that he vomited a litre of blood and that he suffered dizziness and blurry vision. Plaintiff's Exhibit 1, at p. 8.

The Bellevue nursing notes relate that plaintiff reported that he vomited "black stuff" on Sunday morning and that he had several episodes of vomiting the next day. *Id.* at p. 37.

Plaintiff's progress report for February 4 states that Isaac experienced hematemesis and melena for two days prior to admission. *Id.* at p.18.

Finally, the records of a surgical consultation conducted on the evening of February 4 state that plaintiff reported that he began vomiting blood four days prior to his admission. *Id.* at p.19.

The Court concludes that the preponderance of the evidence establishes that the onset date of Isaac's illness was Sunday, February 2. The Bellevue Hospital records support defendant's theory that Isaac began to vomit blood on Sunday morning, February 2. The most detailed notes, those of the physician who saw Isaac at the time he was admitted, state that it was two days prior to his admission that he vomited black blood. The nursing notes and the progress notes leave the same impression.

Although Isaac testified that he vomited for the first time on Saturday morning, February 1, he also said that he received no medical care on Sunday, February 2, and that he was transferred to Bellevue Hospital on Monday morning, February 3. In sum, Isaac testified that he received no medical attention for approximately two and one-half days from early Saturday morning to approximately 10:00 A.M. on Monday morning. It has now been established, however, that Isaac was transferred to Bellevue Hospital not on Monday morning, February 3, but on Tuesday morning, February 4. The two and one-half day sequence of events described by Isaac, taken together with his admission to Bellevue Hospital on Tuesday, suggest that Isaac became ill on Sunday morning and the history that Isaac gave to the Bellevue Hospital Staff supports that conclusion.

Defendant, relying on Isaac's West Street hospital record and the Bureau of Prison records, argues that although Isaac became ill on Sunday, February 2, he did not notify West Street personnel of his condition until Monday, February 3.

Isaac's West Street hospital record, Plaintiff's Exhibit 3, indicates that on Monday, February 3, at approximately 1:30 P.M.,

plaintiff complained to physician attendant William Armstead ("Armstead") that he had been vomiting "d/b [dark brown] coffee-colored blood." He further complained of loss of appetite and fullness of the abdomen but did not complain of diarrhea or constipation. Armstead took Isaac's blood pressure, pulse and respiratory rate. He noted no masses or flatulence and gave plaintiff a "combid span" (medication to alleviate the symptoms of gastric discomfort) for his stomach. He also ordered tests on Isaac's urine and stool.

In a memorandum dated November 30, 1976, Plaintiff's Exhibit 5, Armstead states that he reviewed Isaac's medical records and found that he saw Isaac on February 3 but that: "As far as seeing him prior to this time, I would have to say that I have no recollection to that. This involves a period of about two years and I just couldn't recall . . . ."

In a memorandum dated December 1, 1976, Plaintiff's Exhibit 4, Harry Stevens ("Stevens"), another physician's assistant at the West Street hospital, states that his review of Isaac's record indicates that he saw Isaac at 5:00 P.M. on February 3. At that time, Isaac "displayed facial pallor and [Stevens] advised referral to Dr. Ruggiero." Stevens treated Isaac with Mylanta to relieve his gastric discomfort and advised Isaac to observe his stool for evidence of blood.

Defendant argues that although plaintiff testified that he complained to West Street prison hospital personnel prior to February 3, the absence of any entries on Isaac's West Street records for Sunday, February 2, in light of the parties' stipulation that West Street personnel were under a duty to enter on plaintiff's medical record complaints of serious illness, such as vomiting of blood, establishes that plaintiff did not complain to any hospital personnel prior to February 3.

Defendant also argues that plaintiff did not notify the prison guards about his condition on February 2 because the only guard plaintiff recalls complaining to is

Summors and the Bureau of Prison Records, Defendant's Exhibit C, indicate that Summors was not on duty on February 2 but only on February 3, 1975.

The Court rejects defendant's arguments and finds that plaintiff has established that he notified West Street personnel of his condition on February 2, 1975. The absence of entries on Isaac's medical record for Sunday, February 2 does not establish that Isaac made no complaints to West Street hospital personnel on that date—for the gravamen of Isaac's complaint in this action is that his pleas for medical assistance were ignored. Also, the very West Street medical records that defendant alleges would have included an entry for February 2 had Isaac made a complaint to prison hospital personnel on that day, fail to include a reference to Isaac's visit with Stevens at 5:00 P.M. on February 3, compare Plaintiff's Exhibit 4 with Plaintiff's Exhibit 3 at p. 8, and therefore are incomplete even for February 3.

Nor does the fact that Summors was on duty only on February 3 establish that Isaac made no complaints to prison guards on February 2. Isaac testified that he summoned the prison guards when he first vomited blood and that he continued to request that they obtain medical attention for him during the next two days and the Court credits his testimony. Isaac impressed the Court as an individual who pays a great deal of attention to his diet and to his health in general and it appears to the Court that it would be highly improbable that Isaac would have vomited blood in his cell and thereafter not have sought to obtain medical assistance. That Isaac does not now recall the names of the guards with whom he spoke on February 2 when he was ill—weak, dizzy, and vomiting blood— does not establish that he did not notify them of his condition. Indeed, the government has not offered the testimony of any prison guard who was on duty on February 2 to the contrary.

The Court finds that defendant failed to render proper medical care to Isaac on Sunday, February 2 and on Monday, February 3. Defendant does not allege that Isaac received any medical care on Sunday. It contends, however, that Isaac did receive medical attention on Monday, February 3, as evidenced by Isaac's West Street hospital record. The Court concludes that the medical attention that Isaac received on February 3 was unreasonably inadequate.

Counsel for defendant asked Dr. Present the following question on re-cross-examination: Assuming that doctors were on duty at the West Street prison hospital on February 3, and that Isaac received the treatment that Isaac's West Street record indicates that Armstead provided, did Dr. Present have an opinion, with a reasonable degree of medical certainty, as to whether under the circumstances surrounding plaintiff's incarceration he received care up to the standard of the community? Tr. at 94–95.

Dr. Present responded that Isaac did not receive adequate care on February 3. He stated that the examining doctor should have ascertained the extent of the bleeding; taken a blood count to see if the patient was anemic; and performed a stool test to see if there was blood in his stool.

▇▇▇ The United States may be held liable for damages sustained by a prisoner under its control for the negligent failure to provide the prisoner with reasonable medical care. See *Winston v. United States*, 305 F.2d 253 (2d Cir. 1962), aff'd, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963).[3] The Court concludes that Isaac is entitled to damages in the amount of $1,000 to compensate him for the discomfort and anxiety

---

**3.** Since the acts of negligence on the part of employees of an agency of the United States occurred within the State of New York, the law of the State of New York is controlling on the issues of the United States' liability. 28 U.S.C. § 1346(b). Pursuant to the law of the State of New York, the United States owed a duty to plaintiff to render to him reasonable medical care in light of all the circumstances surrounding his illness and confinement. See *White v. State*, 35 A.D.2d 884, 315 N.Y.S.2d 641 (1970); *Hight v. State*, 35 Misc.2d 926, 231 N.Y.S.2d 361 (Ct.Cl.1962).

he endured as a result of the lack of adequate care from Sunday, February 2, until he was examined by Dr. Ruggiero on Tuesday, February 4.

Settle judgment order on notice.

SO ORDERED.