390 F.3d 1101
 Emmanuel Senyo AGYEMAN, Plaintiff-Appellant,
v.
CORRECTIONS CORPORATION OF AMERICA; Zurich Insurance Company; Gerber, Assistant Shift Supervisor; Valadez, Unit Manager; D. Rivas, Assistant Warden; Laurence, Chief of Security; H. Mohn, Disciplinary Hearing Officer; John Gluch, Warden; Samberg, Warden; Sarah Cannon, Internal Controls Officer; Lopez, Shift Supervisor; Calderon, Defendants-Appellees.
 No. 03-16068.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted November 1, 2004.
 Filed December 6, 2004.
 
 Ilana Rubel and Anjali Kumar, San Francisco, CA, for the plaintiff-appellant.
 Daniel P. Struck, Phoenix, AZ, for the defendants-appellees.
 Appeal from the United States District Court for the District of Arizona; Paul G. Rosenblatt, District Judge, Presiding. D.C. No. CV-99-01366-PGR.
 Before: B. FLETCHER, NOONAN, and THOMAS, Circuit Judges.
 NOONAN, Circuit Judge:
 Emmanuel Senyo Agyeman appeals the judgment of the district court in this Bivens action in favor of the defendant employees of the Corrections Corporation of America. Bivens v. Six Unknown Fed. Narcotics Agents, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). Holding that the district court abused its discretion in declining to appoint counsel for Agyeman, we vacate the judgment and remand.
 PROCEEDINGS
 Agyeman, a native of Ghana, entered the United States in 1988. In 1991, he married a United States citizen, Barbara Levy, who subsequently filed an application for adjustment of his status. Barbara Levy, because she was hospitalized, was unable to attend an INS-scheduled interview, and the adjustment was denied. On July 28, 1997, he was found deportable by an immigration judge, and the decision was affirmed by the Board of Immigration appeals. On July 23, 2002, in Agyeman v. INS, 296 F.3d 871 (9th Cir.2002), from which the foregoing facts are taken, we reversed the Board of Immigration Appeals, holding that Agyeman had not received a full and fair hearing, and remanded.
 
 
 1
 Meanwhile, on February 4, 1997, prior to the immigration judge's ruling, Agyeman had been detained by the Immigration and Naturalization Service (the INS) and thereafter placed in custody in various correctional institutions, some of them operated by the Corrections Corporation of America (the Corrections Corporation), a private company employed by the federal government. On June 10, 1999, he initiated this litigation in response to the treatment he received from his custodians. On October 25, 1999, Agyeman was allowed to proceed in forma pauperis. In a Screening Order dated that day, the district court pointed out various glaring deficiencies in his complaint. In response, on November 5, 1999, Agyeman filed his first amended complaint. On February 9, 2000, several of his claims were dismissed by the court without prejudice. His motion to file a second amended complaint was affirmatively recommended by the magistrate judge to whom the case had been assigned, but only after the excision of several claims and defendants. These recommendations were adopted by the district court on January 4, 2001.
 
 
 2
 Earlier, on November 13, 2000, the magistrate judge had denied without prejudice Agyeman's motion to appoint counsel. The magistrate judge stated: "Plaintiff has failed to show that any difficulty he is experiencing in attempting to litigate this case is derived from the complexity of the issues involved." No constitutional right to counsel was at stake, the magistrate judge ruled, because the "case is beyond the pleading stage."
 
 
 3
 At the center of Agyeman's case were these allegations:
 
 
 4
 On October 11, 1998, Plaintiff, a pretrial detainee, at Corrections Corporation of America, Central Arizona Detention Center in Florence Arizona was beaten by Captain Lopez, the Shift Supervisor, Lt. Egber and a Sgt. "John Doe". Whilst in full mechanical restraints in preparation for being transported to Casa Grande Medical Center in an Emergency the Prison Medical Unit believed was a cardiac arrest,
 
 
 5
 Plaintiff was nonetheless knocked to the floor by Captain Lopez, Lt. Egber and a Sgt. "John Doe" for refusing to comply with an order and wasting their time. Plaintiff barely was conscious.
 
 
 6
 Plaintiff suffered pain and anguish; three broken teeth; loss of blood and several bruises. Plaintiff suffered torture from being restrained in an unnatural position in a locked cell and fastened to a bed for several hours (At least 12 hours) calculated to inflict pain.
 
 
 7
 Agyeman's motion to file a third amended complaint was denied.
 
 
 8
 The case went to trial and after three and one half days, on May 2, 2003, the jury found in favor of the defendants. On June 25, 2003, the district court denied Agyeman's motion for relief under Fed.R.Civ.P. 60(b)(3), his motion for a new trial, and his motion for judgment as a matter of law.
 
 
 9
 Agyeman appealed in forma pauperis. The district court certified that the appeal was not taken in good faith and revoked this status. A motions panel of this court reviewed the record and ruled that Agyeman was entitled to this status for this appeal. This court also granted Agyeman's motion for appointment of pro bono counsel to represent him.
 
 ANALYSIS
 
 10
 In proceedings in forma pauperis, the district court "may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). The decision to appoint such counsel is within "the sound discretion of the trial court and is granted only in exceptional circumstances." Franklin v. Murphy, 745 F.2d 1221, 1236 (9th Cir.1984). A finding of the exceptional circumstances of the plaintiff seeking assistance requires at least an evaluation of the likelihood of the plaintiff's success on the merits and an evaluation of the plaintiff's ability to articulate his claims "in light of the complexity of the legal issues involved." Wilborn v. Escalderon, 789 F.2d 1328, 1331 (9th Cir.1986) (quoting Weygandt v. Look, 718 F.2d 952, 954 (9th Cir.1983)).
 
 
 11
 Agyeman's case brought against Corrections Corporation and its employees, had a triple complexity. First, to the extent that Agyeman sought to hold Corrections Corporation itself liable, the case could not be brought under Bivens, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619, since Corrections Corporation is a private corporation. See Correctional Services Corp. v. Malesko, 534 U.S. 61, 122 S.Ct. 515, 151 L.Ed.2d 456 (2001) (declining to apply Bivens to private corporations). Rather, Agyeman could have brought a suit against the United States under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b)(1), 2671-2680; United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). Alternatively, he could have sued the corporation directly in tort and he could have sought injunctive relief. See Malesko, 534 U.S. at 72-74, 122 S.Ct. 515(discussing alternative options for federal prisoners in private prisons). Agyeman would have had the option of bringing this suit against Corrections Corporation by joining the latter as a defendant in the suit under the Federal Tort Claims Act and requesting the district court to exercise supplemental jurisdiction over this defendant. 28 U.S.C. § 1367; see Lester S. Jason & Robert C. Longstreth, Handling Federal Tort Claims §§ 6.02-.03 (2004).
 
 
 12
 Second, to the extent that Agyeman sought recovery from individual employees of the Corrections Corporation, the case had to brought as a Bivens action. Bivens, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619. Third, to the extent that Agyeman's status as a person being held on noncriminal charges enhanced his rights beyond those of an ordinary criminal prisoner, an issue was presented whether the standard Bureau of Prison rules governing the transfer of prison inmates were applicable to him.
 
 
 13
 The district court in its ruling on his second amended complaint did inform Agyeman of the peculiar position of the Corrections Corporation; but the court did not give him the opportunity to use the information. As to the nature of his action against the employees, not only did Agyeman misconceive it to be a section 1983 action against state employees, but neither the magistrate judge nor the district judge caught the error. Only on appeal was it noted by counsel for Corrections Corporation. Finally, at no point did Agyeman gain access to what Corrections Corporation on appeal has argued is the decisive standard for the restraints put on him prior to transfer for treatment of his emergency medical condition: the 16 pages of the Federal Bureau of Prisons' regulations of December 23, 1996, entitled "Escorted Trips," regulations on their face applicable to felons and innocent detainees alike.
 
 
 14
 Agyeman, it is obvious from his pleadings, is literate and educated. He was able to read statutes and legal literature. But he lacks legal training. As is evident from the record, a lawyer attentive to differences would have noticed that Agyeman should have sued the employees under Bivens, and the United States and the corporation under the Federal Tort Claims Act. Instead, he was left to articulate a case where, if he had prevailed before the jury, the defendants would have successfully moved for judgment as a matter of law on the ground that they could not be sued as state actors. Without gaining access to the federal prison regulations, Agyeman could not establish that the treatment he alleged that he received was or was not contrary to what was required by the United States as to noncriminal detainees. Without a lawyer, Agyeman not only did not think of obtaining this information but did not advance any coherent theory for subjecting Corrections Corporation to liability. His case, in short, was complex. The circumstances were exceptional. The magistrate judge who ruled on Agyeman's request for counsel knew very little of the likelihood of his success on a claim that had not been properly framed.
 
 
 15
 A further fact, enhancing the exceptional character of the case, is the anomaly of incarcerating a person on noncriminal charges and confining him for seven years. Such incarceration may be a cruel necessity of our immigration policy; but if it must be done, the greatest care must be observed in not treating the innocent like a dangerous criminal. Is there any warrant for shackling the feet and binding the chest of an innocent detainee? It requires legal skill to frame this issue and distinguish Agyeman's case from that of the ordinary transferee taken by the Bureau of Prisons on an Escorted Trip.
 
 
 16
 Because Agyeman was denied counsel, the judgment in his case must be VACATED. The case is REMANDED for proceedings consistent with this opinion, including the appointment of counsel by the district court.