**NONPRECEDENTIAL DISPOSITION**

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted May 7, 2014[*]
Decided May 7, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

| | |
|---|---|
| No. 13-2954 | Appeal from the United States District Court for the Southern District of Indiana, Terre Haute Division. |
| KIM MILLBROOK, *Plaintiff-Appellant,* | |
| *v.* | No. 2:10-cv-246-WTL-WGH |
| UNITED STATES OF AMERICA, *Defendant-Appellee.* | William T. Lawrence, *Judge.* |

**O R D E R**

Kim Millbrook, a federal inmate, appeals from a judgment against him after a bench trial under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680, asserting that Officers Stanley Pound and Kenneth Swick injured him by slamming his cell door's food slot onto his arm and hand. He also challenges the grant of summary judgment

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

against him on his claim that Lieutenant Derrick Mosley acted negligently when he observed the attack but did nothing to stop it. We affirm.

At summary judgment the parties recounted different versions of an incident that occurred when Millbrook was incarcerated at the high-security penitentiary in Terre Haute, Indiana. (He has since been transferred to Lewisburg, Pennsylvania.) Millbrook provided the following account. He told Officers Pound and Swick that he was spitting up blood and requested medical attention. The guards ignored him, so to get their attention he stuffed a sheet into his cell door's food slot.[1] When Pound and Swick returned, they snatched the sheet, reached through the slot, grabbed his arm and hand, and shut the slot's door onto his arm and hand. Meanwhile, Lieutenant Derrick Mosley arrived on the scene, watched the altercation, but did not intervene. The government maintained, however, that when Officers Pound and Swick discovered the sheet, they removed it and shut the food slot without making any physical contact with Millbrook. Millbrook's medical record shows that the next day he was treated for a cut on his left index finger and redness on his left forearm and elbow, and Millbrook reported that the injuries were caused by his arm and hand getting shut in the food slot.

The district court granted summary judgment for the government on Millbrook's negligence claims. The court concluded that the actions Millbrook attributed to Officers Pound and Swick amounted to "deliberate conduct" and thus did not establish negligence. Nor could Millbrook establish negligence on the part of Lieutenant Mosley, the court added, merely by asserting he "stood back and allowed Pound and Swick to assault him."[2] But the court concluded that a fact question existed over whether Pound and Swick intentionally slammed the food slot onto Millbrook, so the court denied summary judgment on the assault and battery claims.

---

[1] The food slot is an opening in the cell door that is about 3 inches tall, 7 or 8 inches wide, 1 ½ inches thick, and made of 14-gauge steel. The opening has its own door that opens downward and can be locked with a key.

[2] A scrivener's error appeared in the court's order. The court wrote that "[w]ith respect to Mosley, Millbrook asserts that he stood back and allowed Pound and Swick to assault him. These allegations are sufficient to raise a genuine issue of material fact with regard to whether Mosley was negligent." In a subsequent order following the final pretrial conference, the court replaced the word "sufficient" with "insufficient."

Discovery continued and Millbrook sought to compel the government to produce videotaped footage of the incident that allegedly was captured on the security camera outside his cell. The government responded that it could not produce the tape because it had been recycled. The court denied Millbrook's request, noting that if "there is a video of the incident . . . the parties may make arrangements for the plaintiff to have a copy of it or at least meaningful access to it." Millbrook maintained that the incident was videotaped, insisting in another motion that certain administrative reports proved that the tape exists. The court responded that "[i]f necessary, the Court will hold a hearing regarding the Plaintiff's allegation of spoliation of evidence either at a hearing prior to trial or during trial."

Several times before the parties went to trial, Millbrook asked the district court to enlist counsel. Millbrook first asked the court to recruit counsel before the government had filed a responsive pleading; he explained that he had limited access to the law library, no longer was incarcerated in Terre Haute, and his bipolar and posttraumatic stress disorders rendered him incompetent to represent himself. The court denied the request, concluding that his "comprehensible filings, his use of the court's processes, his familiarity with both the factual circumstances surrounding his claims and with the legal issues associated with those claims," demonstrated his competence to litigate alone. Then, after the court ruled on summary judgment, Millbrook twice within days requested counsel, advancing the same reasons as in his first request. The court denied those requests but noted that it would keep open the possibility of enlisting counsel at a later stage if "plaintiff's incarceration and *pro se* status would make it particularly difficult for him to proceed without representation." Finally, the court addressed the matter at the final pretrial conference and explained that "[g]iven the fact that the Plaintiff is incarcerated in Pennsylvania, it is not logically feasible for the Court to appoint counsel."

Also before trial Millbrook moved to amend his complaint to increase the amount of damages tenfold from $50,000 to $500,000. The district court took the motion under advisement.

At trial Millbrook and Officers Pound and Swick testified to their conflicting accounts of the incident. Officer Pound testified specifically that, as he reached to shut the food slot, he saw Millbrook's face in the cell's window—a sighting that was significant, he explained, because Millbrook could not have been visible if his hand were still in the slot. Pound added that he felt no resistance when he shut the slot. Daniel Burks, a member of the Special Investigative Service at USP Terre Haute,

testified for the government about the methods of taping and preserving video footage at the prison; he explained that by the time he received Millbrook's administrative claim (a month after the incident), the videotape in question had already been taped over.

The district court found in favor of the government. The court credited the officers' testimony—particularly Officer Pound's "detailed recollection" of seeing Millbrook's face in the cell window—over Millbrook's testimony that the officers slammed the slot door onto his arm and hand. Concerning Millbrook's allegation of spoliation, the court concluded that there was "no evidence that Agent Burks was alerted to an incident requiring the preservation of video footage before he received Millbrook's administrative remedy in January 2010." The court also denied as moot Millbrook's motion to amend his complaint.

On appeal Millbrook first argues that the district court wrongly granted summary judgment for the government on his negligence claim against Lieutenant Mosley. Millbrook contends that his assertion that Mosley stood by while Officers Pound and Swick attacked him raises a fact question over whether Mosley breached his duty to protect inmates from harm.

Even if we assume that Millbrook's negligence claim should have survived summary judgment, as the Bureau of Prisons owes a duty of care to federal prisoners to provide for their safekeeping and protection, 18 U.S.C. § 4042(a)(2), (3); *United States v. Muniz,* 374 U.S. 150, 164–65 & n.26 (1963); *Parrott v. United States,* 536 F.3d 629, 636–37 (7th Cir. 2008), any error here was harmless. In its entry of judgment for the government after the bench trial, the district court explained that it weighed Millbrook's trial testimony against the officers', and found (1) that the officers did not slam the food slot's door onto Millbrook's arm and hand, and (2) Lieutenant Mosley did not see Millbrook's arms sticking out of the food slot. In light of these findings, Millbrook cannot prevail on his negligence claim against Mosley, so the court's decision did not affect his substantial rights. *See* FED. R. CIV. P. 61; *Patton v. MFS/SUN Life Fin. Distribs., Inc.,* 480 F.3d 478, 484 (7th Cir. 2007).

Millbrook next asserts that the district court should have compelled the government to produce the prison's security videotape, which, he says, would show the officers attacking him and contradict the officers' trial testimony. He asserts that he was able to recover a videotape from the government in an unrelated case, and thus the footage in this case must exist or must have existed at some point yet was not preserved by the government. But at the time the court ruled on Millbrook's first motion, the court

was not wrong to tell the government to arrange for Millbrook to see it (if the tape existed) when Millbrook had not certified that he had conferred or attempted to confer with the government in an effort to obtain the tape. *See* FED. R. CIV. P. 37(a)(1); *Kalis v. Colgate-Palmolive Co.*, 231 F.3d 1049, 1059 (7th Cir. 2000). In any event, at trial Daniel Burks testified that by the time he began his investigation of the incident, footage from that date had already been taped over. And Officer Swick explained that there was no incident report that would have alerted the prison to save the tape because reports are not prepared for "run-of-the-mill" incidents like blocking the food slot with a sheet. To the extent that Millbrook challenges the court's conclusion that the government did not recycle the tape to hide adverse information, he offers no reason (nor do we see any) to disturb the court's finding. *See Norman-Nunnery v. Madison Area Technical Coll.*, 625 F.3d 422, 428–30 (7th Cir. 2010).

Millbrook also argues that the district court abused its discretion by declining to enlist counsel. He maintains that, because he was no longer incarcerated in Terre Haute, he could not adequately investigate, locate, or present key witnesses or evidence (such as the videotape). Indeed, because of his transfer to a different prison, Millbrook potentially faced hurdles that a typical incarcerated litigant does not, and the district court should have considered those circumstances. *See Santiago v. Walls*, 599 F.3d 749, 762–64 (7th Cir. 2010); *Pruitt v. Mote*, 503 F.3d 647, 655 (7th Cir. 2007) (en banc). Setting the district court's explanation aside, Millbrook cannot show that he was prejudiced by the ruling because counsel would not have altered the outcome of the litigation. *Bracey v. Grondin*, 712 F.3d 1012, 1017 (7th Cir. 2013); *Pruitt*, 503 F.3d at 659. Millbrook knew the identities of all the prison employees involved in the incident and adequately engaged in discovery by preparing interrogatories and requests for admissions. *See Santiago*, 559 F.3d at 763 & n.11 (incarcerated § 1983 plaintiff prejudiced by lack of recruited counsel because he needed to obtain identities of defendants and witnesses, medical files, incident reports, grievances, and camera footage located at different institution). Moreover, the only evidence that Millbrook says he was unable to obtain—the videotape—could not have been procured by counsel because the record does not support the conclusion that the videotape existed when he asked for it. And spoliation is not a complex legal issue supporting recruitment of counsel. *See Bracey*, 712 F.3d at 1017.

Lastly, Millbrook contests the district court's denial of his motion to amend his complaint to raise the amount of alleged damages. But leave to amend need not be granted if amending would be futile, *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013), and the court's ruling here in favor of the government effectively foreclosed relief.

AFFIRMED.