**INDUSTRIAL FUEL & ASPHALT OF INDIANA, INC., Plaintiff,**

v.

**The UNITED STATES of America, The Department of Energy, and The Federal Energy Regulatory Commission, Defendants.**

**Civ. No. H83–433.**

United States District Court, N.D. Indiana, Hammond Division.

Sept. 18, 1984.

Grant J. Gruel, Robert J. Riley, Cholette Perkins & Buchanan, Grand Rapids, Mich., Saul I. Ruman, Hammond, Ind., for plaintiff.

Charles B. Miller, Asst. U.S. Atty., Hammond, Ind., for defendants.

### ORDER

MOODY, District Judge.

This cause is before the Court on a Motion to Dismiss filed by the defendants on November 16, 1983. The motion seeks dismissal of this action under, alternatively, Rule 12(b)(1), for lack of subject-matter jurisdiction, or under Rule 12(b)(6), for lack of subject-matter jurisdiction, or under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. Because the Court finds that dismissal is required under Rule 12(b)(6), this Order will not address the asserted Rule 12(b)(1) claim.

This is an action for damages brought under the Federal Tort Claims Act, 28 U.S.C. § 2671 et seq. Plaintiff alleges that the Economic Regulatory Administration ("ERA") and the Office of Hearings and Appeals ("OHA") of the Department of Energy ("DOE") indulged in wrongful delay in processing its applications under the Mandatory Petroleum Allocation Regulations, 10 C.F.R. § 211 et seq., for an allocation of crude oil for use in plaintiff's Hammond, Indiana refinery.

Under the Emergency Petroleum Allocation Act, 15 U.S.C. § 751 et seq., the DOE's predecessor, the Federal Energy Administration ("FEA"), was directed to promulgate regulations governing pricing and allocating crude oil and petroleum products. Pursuant to this directive the FEA established the Mandatory Crude Oil Allocation Program on January 15, 1974.[1] This pro-

---

1. Crude oil and petroleum products were ex-  empted from these regulations by Executive Or-

gram, popularly known as the "buy-sell program", was intended to ensure that small refineries had access to necessary quantities of crude oil. 10 C.F.R. § 211.65. This purpose was accomplished by requiring major integrated refiners (refiner-sellers) to make specified quantities of crude oil available for purchase by qualifying small refiners (refiner-buyers).

Section 211.65(c) of the buy-sell program, on which IFAI's claim is based, provided that emergency supplemental allocations of crude oil could be made to refiner-buyers which had experienced a serious reduction in their crude oil supplies and were unable to replace such supplies through their own efforts. 10 C.F.R. § 211.65(c). To qualify for an emergency allocation, a refiner-buyer had to demonstrate that a reduction had occurred in its crude oil supplies equivalent to at least 25% of its DOE-certified refining capacity or 25% of its crude oil runs to stills as compared with the base period (January-October 1978). 10 C.F.R. § 211.-65(c)(2).

When it established DOE, Congress authorized and directed the agency to grant exceptions from DOE regulations for firms which experienced a serious hardship, gross inequity or unfair distribution of burdens as a result of the operation of the regulations. Sections 301 and 504(a) of the Department of Energy Organization Act,

42 U.S.C. §§ 7151, 7194; 10 C.F.R. § 205.-50.

Plaintiff operates a refinery qualifying as a "small refinery" under the above program. 10 C.F.R. § 211.62. On April 24, 1979 plaintiff applied to the ERA for an emergency allocation of crude oil under the buy-sell program; on May 16, 1979 ERA issued a Decision and Order denying the application.[2] Plaintiff pursued the matter, in various guises. That pursuit consumed more than a year.[3] Plaintiff brings this action seeking damages for the losses which it allegedly sustained in pursuing the allocation.

Defendants have moved to dismiss plaintiff's action as failing to state a claim upon which relief can be granted. Defendants contend that this action falls within that category of actions expressly excluded from the provisions of the Federal Tort Claims Act by 28 U.S.C. § 2680(a). 28 U.S.C. § 2680(a) provides that the provisions of the act do not apply to:

> Any claim based upon an act or omission of an employee of the Government, exercising due care, *in the execution of a statute or regulation,* whether or not such statute or regulation be valid, *or based upon the exercise or performance or the failure to exercise or perform a discretionary function* or duty on the part of a federal agency or an employee

der 12287, which President Reagan issued on January 28, 1981. 46 Fed.Reg. 4909 (January 30, 1981).

2. The denial was based upon plaintiff's prior relationship with another small refiner, the Arizona Fuels Corporation ("Arizona Fuels"). During the relevant period for assessing entitlements to allocations, plaintiff processed more than 87% of its total crude oil runs for Arizona Fuels. Plaintiff's application for the emergency allocation was denied because ERA found that the oil processed for Arizona Fuels should be excluded in computing the amount of the emergency allocation to which plaintiff was entitled. This finding resulted from the fact that Arizona Fuels had consistently refused to comply with the requirements of the domestic crude oil allocation program.

3. On June 5, 1979 plaintiff filed a request with OHA for an exception to the ERA's decision. On December 14, 1979 OHA found that it was

error to exclude the Arizona Fuels processing volumes from the allocation calculation, and remanded for reconsideration. OHA also directed ERA to provide plaintiff with a specified emergency allocation. Plaintiff then requested another emergency allocation, a request which ERA denied on February 13, 1980; the denial was again based upon plaintiff's relationship with Arizona Fuels. Plaintiff appealed the denial to OHA and on March 24, 1980 OHA denied the appeal and upheld ERA. Plaintiff then filed for an exception, to overcome exclusion of the Arizona Fuels volume from the allocation computation. On January 27, 1981, after consideration of objections filed to the exclusion, OHA granted plaintiff the relief requested. This was a Pyrrhic victory, however, for on January 28, 1981 President Reagan issued an executive order terminating the buy-sell program and all benefits therefrom. *See* n. 1, *supra.*

of the Government, whether or not the discretion involved be abused.

28 U.S.C. § 2680(a) [emphasis added]. Defendants argue that they are immune from liability in an action such as this by virtue of the above provision.

This provision, the so-called "discretionary function exception", has received a great deal of attention since its enactment. *See e.g., Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953); *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955). Despite this attention, the precise contours of a discretionary function falling within the above provision have remained undefined.

The Supreme Court recently re-addressed this issue in *United States v. S.A. Empresa de Viacao Aerea Rio Grandense (Varig Airlines),* —— U.S. ——, 104 S.Ct. 2755, 81 L.Ed.2d 660 (1984). *Varig Airlines* involved two cases in which the Federal Aviation association ("FAA") was sued for the alleged consequences of its asserted negligence. —— U.S. at ——–——, 104 S.Ct. at 2758–2759. The alleged negligence derived from the FAA's procedures for certifying aircraft for use in commercial aviation. *Id.* Both actions were based upon allegations that the FAA had been negligent in certifying airplanes that later crashed, with great loss of life. *Id.* The Supreme Court used these two cases as the occasion for specifying what the threshold requirements are for triggering application of the exception. *Id.*

Though the Supreme Court had thoroughly reviewed the legislative history for the exception in its decision in *Dalehite v. United States,* 346 U.S. 15, 26–30, 73 S.Ct. 956, 963–965, 97 L.Ed. 1427 (1953), the Court referred again to parts of that history in *Varig Airlines.* The Court quoted passages from the legislative history that indicate that 28 U.S.C. § 2680(a) was "designed to preclude application of the act to a claim based upon an alleged abuse of discretionary authority by a regulatory ... agency." —— U.S. at ——, 104 S.Ct. at 2762. Other sections quoted state that the

Federal Tort Claims Act was not intended to permit actions challenging "the propriety of a discretionary administrative act." *Id.* A final quotation included in *Varig Airlines* notes that 28 U.S.C. § 2680(a) "would 'exemp[t] from the act claims against Federal Agencies *growing out of their regulatory activities.'*" Id. (emphasis added in *Varig Airlines* ).

After reviewing this legislative history the Court isolated two factors to be employed in determining whether the exception applies in a particular instance. —— U.S. at ——, 104 S.Ct. at 2764. The first factor is "the nature of the conduct" involved. *Id.* The second factor was described in more detail:

> [W]hatever else the discretionary function exception may include, it plainly was intended to encompass the discretionary acts of the Government acting in its role as a regulator of the conduct of private individuals. Time and again the legislative history refers to the acts of regulatory agencies as examples of those covered by the exception, and it is significant that the early tort claims bills considered by Congress specifically exempted two major regulatory agencies by name. This emphasis upon protection for regulatory activities suggests an underlying basis for the inclusion of an exception for discretionary functions in the Act: Congress wished to prevent judicial "second-guessing" of legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort. By fashioning an exception for discretionary governmental functions, including regulatory activities. Congress took "steps to protect the Government from liability that would seriously handicap efficient government operations."

*Id.* (notes omitted); *see also* 346 U.S. at 58, n. 12, 73 S.Ct. at 979, n. 12. Other decisions have touched on this same issue, making it clear that the exception is intended to "protect the Government from liability that would seriously handicap efficient government operations." *United States v.*

*Muniz,* 374 U.S. 150, 163, 83 S.Ct. 1850, 1858, 10 L.Ed.2d 805 (1963).

This Court finds that the actions which are the subject of plaintiff's suit are actions falling within the discretionary exception embodied in 28 U.S.C. § 2680(a). Both ERA and OHA are clearly agencies involved in regulatory functions directly affecting economic policy; both agencies were involved in regulating the conduct of private individuals to best effectuate economic policies. And the decisional, discretionary nature of the activities at issue herein is apparent from the fact that the processing of plaintiff's applications for emergency allocations resulted in disagreement between the two agencies. Had this been a mechanical process such as is not encompassed by 28 U.S.C. § 2680(a), it is exceedingly unlikely that such disputes would have arisen; the intrinsic effect of policy considerations upon these disagreements, and their attendant delays, is equally apparent. Policy considerations were extant not only in the determination of plaintiff's entitlement to an allocation, but also in the controversy over the appropriate effect to be given to Arizona Fuel's intransigence in regard to compliance with the domestic crude oil allocation program. It is quite clear that the duties involved in making these determinations are duties encompassed by 28 U.S.C. § 2680(a) and must be dismissed pursuant to Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

It is, therefore, ORDERED that defendants' Motion to Dismiss be and the same is hereby GRANTED: This action is DISMISSED pursuant to Fed.R.Civ.P. Rule 12(b)(6).